**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KRISTAN HENDERSON, o/b/o B.H., a Minor, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   C.A. No. 19-1666-MN-SRF |
| | ) |
| ANDREW SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

## I.   INTRODUCTION

Kristan Henderson, on behalf of B.H., a minor ("Plaintiff"), filed this action on September 6, 2019 against defendant Andrew Saul, the Commissioner of the Social Security Administration (the "Commissioner"). Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner's final decision denying Plaintiff's claim for child's supplemental security income ("SSI") benefits under Title XVI of the Social Security Act (the "Act"). 42 U.S.C. §§ 1381–1383f. Before the court are cross-motions for summary judgment filed by Plaintiff[1] and the Commissioner.[2] (D.I. 12; D.I. 14) Plaintiff seeks review of the Commissioner's decision. (D.I. 12 at 1, 4) The Commissioner asks the court to affirm the decision of the administrative law judge ("ALJ"). (D.I. 27 at 2) For the reasons set forth below, the court recommends DENYING Plaintiff's motion for summary judgment (D.I. 12), and GRANTING the Commissioner's cross-motion for summary judgment (D.I. 14).

_____

[1] The court construes Plaintiff's opening brief as a motion for summary judgment. (D.I. 12)
[2] The briefing for the pending motions is as follows: Plaintiff's opening brief (D.I. 12) and the Commissioner's combined opening brief in support of his motion for summary judgment and answering brief (D.I. 15). Plaintiff stands upon the opening brief. (D.I. 10; 1/5/2021 Oral Order)

## II.     BACKGROUND

### A.     Procedural History

Plaintiff filed a claim for SSI on July 8, 2014, claiming a disability onset date of April 15, 2009.  (D.I. 8-3 at 10; D.I. 8-6 at 8)  Plaintiff's claims were initially denied on February 27, 2015.  (D.I. 8-4 at 2-5)  Plaintiff filed a request for a hearing, and two hearings were held before the ALJ on August 10, 2017 and November 29, 2017.  (D.I. 8-2 at 60-110)  On April 3, 2018, ALJ Jennifer M. Lash issued an unfavorable decision, finding that Plaintiff was not disabled under the Act.  (*Id.* at 28-47)  The Appeals Council subsequently denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (*Id.* at 7-12)  Plaintiff brought a civil action in this court challenging the ALJ's decision on September 6, 2019.  (D.I. 2)  On July 2, 2020, Plaintiff filed a brief in support of the civil complaint, which the court construes as a motion for summary judgment.  (D.I. 12)  The Commissioner filed a cross-motion for summary judgment on September 24, 2020. (D.I. 14)

### B.     Educational and Medical Assessments

In December 2010, Plaintiff underwent a school evaluation after Plaintiff's family members expressed concerns about Plaintiff's communication skills and fine motor development.  (D.I. 8-7 at 72-73)  Delays in cognitive and communication development were noted, but Plaintiff was described as cooperative and eager to participate in activities, with good attention to the assigned tasks.  (*Id.* at 75-76)  It was determined that Plaintiff was eligible to receive early intervention services, including speech therapy and specialized instruction services. (*Id.* at 79)

In August 2012, Plaintiff completed a comprehensive biopsychosocial evaluation at The Center for Autism with Dr. Richard Margolis to determine whether Plaintiff had an autism

spectrum disorder.  (D.I. 8-8 at 3)  Plaintiff's mother expressed concern about Plaintiff's speech delay and social development, including difficulty making eye contact, a preference for playing alone, and a failure to recognize the personal space of others.  (*Id.*)  Plaintiff's social responsiveness score was in the severe range and supported a clinical diagnosis of an autistic disorder.  (*Id.* at 4)  Dr. Margolis observed Plaintiff's speech delay, lack of social skills in developing peer relationships, difficulty with transitions, short attention span, and elevated activity level.  (*Id.* at 5)  Dr. Margolis diagnosed Plaintiff with Pervasive Developmental Disorder, NOS, and Attention Deficit Hyperactivity Disorder ("ADHD").  (*Id.*)  But Plaintiff's family indicated that Plaintiff has a good memory, is a good listener, expresses affection, and helps out when asked.  (*Id.*)  Dr. Margolis further noted that Plaintiff could brush his teeth, get dressed, and bathe independently and had no delays in his fine or gross motor skills.  (*Id.* at 4)  Dr. Margolis recommended that Plaintiff receive outpatient services from a provider specializing in autism spectrum disorder, as well as a consultation with a behavioral specialist consultant who could develop a behavior program for Plaintiff.  (*Id.* at 6)

In a functional behavior assessment completed in March 2013, Plaintiff's teacher indicated that Plaintiff struggled to follow directions and classroom procedures, particularly during unstructured class time and writing lessons.  (D.I. 8-8 at 47-48)  The teacher observed that Plaintiff's focus improved when working one-on-one with a teacher.  (*Id.*)

Plaintiff's 2014 Individualized Education Program ("IEP") provided that Plaintiff would participate full-time in the regular education classroom with the exception of 30-minute speech sessions throughout the year.  (D.I. 8-8 at 10, 29)  The assessment indicated that Plaintiff's academics were strong, and Plaintiff did not exhibit behaviors that impeded Plaintiff's learning or that of others.  (*Id.* at 15-16)  Areas requiring improvement included language processing

skills and pragmatic/social skills.  (*Id.* at 16)  Plaintiff struggled to converse with peers and stay on topic during speech therapy sessions, often interrupting conversations with off-topic comments or questions.  (*Id.*)  Recommendations were made for testing in a small group setting in a quiet area with extended time.  (*Id.* at 19)  Plaintiff was determined to be eligible for extended school year services for speech therapy.  (*Id.* at 27-28)

A December 2014 progress report from Plaintiff's teacher emphasized Plaintiff's struggle to focus on assignments and described Plaintiff's disruptive behavior in the classroom.  (D.I. 8-8 at 9)  The teacher indicated that Plaintiff's ability to focus improved in small group guided instruction or when Plaintiff was paired with a peer tutor.  (*Id.*)  The teacher recommended one-on-one or small group instruction daily for Plaintiff.  (*Id.*)

Plaintiff also underwent a consultative child psychiatric evaluation with Dr. Sari Fleischman in December 2014.  (D.I. 8-8 at 80)  Dr. Fleischman noted that Plaintiff exhibited both verbal and physical aggression towards adults and peers at school and at home, and described Plaintiff's difficulty paying attention and concentrating in tasks and play.  (*Id.*)  During the examination, Dr. Fleischman noted that Plaintiff "had a mild articulation problem" and poor eye contact, but "[o]verall intelligibility was good" and Plaintiff exhibited "[c]oherent and goal directed" thought processes.  (*Id.* at 81)  Dr. Fleischman noted impaired memory due to inattention, and average to below average cognitive function.  (*Id.* at 82)  Although Dr. Fleischman stated that Plaintiff could dress, bathe and groom independently, Plaintiff required constant supervision and redirection.  (*Id.*)  Dr. Fleischman concluded that the results of Plaintiff's examination were consistent with psychiatric problems impacting Plaintiff's ability to function on a daily basis, and Plaintiff was diagnosed by history with autism spectrum disorder and ADHD, as well as unspecified depressive disorder.  (*Id.* at 82-83)  Dr. Fleischman

recommended that Plaintiff receive individual psychological and psychiatric intervention as well as an evaluation by the Board of Education for alternative educational services.  (*Id.* at 83)

In January 2015, Plaintiff had a well visit with the pediatrician, Dr. Marcie E. Macolino. (D.I. 8-9 at 7-26)  It was noted that Plaintiff was receiving speech therapy through school and was scheduled to have an occupational therapy intake meeting the following week.  (*Id.* at 7) Plaintiff's mother reported that Plaintiff had difficulty processing and focusing on directions at school, and Plaintiff was exhibiting increasingly aggressive and reactionary behavior.  (*Id.*) Plaintiff was diagnosed with pervasive developmental disorder and the pediatrician recommended an evaluation with CHOP Autism Center and counseling with additional academic support.  (*Id.* at 8)  Plaintiff had a normal physical exam, with stable and well-controlled asthma. (*Id.* at 7-8)

In March 2015, Plaintiff's third grade teacher completed a questionnaire indicating that Plaintiff had a difficult time focusing and required constant redirection.  (D.I. 8-7 at 27-28) While Plaintiff exhibited proficiency in math, Plaintiff's teacher stated that Plaintiff had basic written language skills and struggled to express ideas in written form or provide organized oral explanations and descriptions.  (*Id.* at 26-27)  Plaintiff's teacher indicated no problems understanding Plaintiff's speech and normal functioning in physical activities.  (*Id.* at 30) Implementation of behavior modification strategies on a daily or weekly basis was recommended.  (*Id.* at 29)

Also in March 2015, Plaintiff underwent a biopsychosocial evaluation with Dr. Rosemarie Manfredi to assess concerns with Plaintiff's attention, behavior, and speech.  (D.I. 8-9 at 27)  In particular, Plaintiff's mother raised concerns about Plaintiff's tendency to be argumentative, aggressive, emotional and disruptive, as well as Plaintiff's difficulty staying

focused and remaining on task without individualized attention.  (*Id.* at 27-28)  Plaintiff's mother

stated that Plaintiff continued to experience underdeveloped speech and awkward social

interactions.  (*Id.* at 28)  Dr. Manfredi reported that Plaintiff became emotional, defensive, and

angry during the examination, making little eye contact.  (*Id.* at 31)  Dr. Manfredi indicated that

Plaintiff exhibited "unusual thinking during the evaluation."  (*Id.*)  No problems with memory or

motor skills were indicated.  (*Id.* at 31-32)

Dr. Manfredi performed a childhood autism rating evaluation ("CARS-2") as part of the

assessment, finding that Plaintiff exhibited severe limitations in the areas of social-emotional

understanding, emotional expression, and regulation of emotions.  (*Id.* at 32)  These results were

consistent with a mild autism spectrum disorder and a diagnosis of pervasive developmental

disorder.  (*Id.* at 33)  Plaintiff's mother also completed a Conners-3 evaluation to assess

Plaintiff's behavior.  (*Id.*)  Dr. Manfredi noted that Plaintiff's mother's responses were

inconsistent and unusually negative, and therefore possibly invalid.  (*Id.*)  Nonetheless, the

assessment indicated Plaintiff had severe behavioral difficulties.  (*Id.*)  Plaintiff's mother also

completed a social responsiveness scale evaluation ("SRS-2"), designed to measure symptoms of

autism.  (*Id.*)  The results were consistent with Plaintiff's diagnosis of an autism spectrum

disorder.  (*Id.*)  Dr. Manfredi recommended completion of a functional behavior assessment to

determine what services were needed to address Plaintiff's behaviors.  (*Id.* at 35)  Dr. Manfredi

also recommended that Plaintiff's mother seek a more comprehensive psychoeducational

evaluation from Plaintiff's school or from another source to measure cognitive and intellectual

functioning, academic achievement, and social-emotional functioning.  (*Id.* at 36)

In December 2017, multiple communications were made to Mental Edge Counseling

LLC to obtain records for Plaintiff's treatment, but no response was received.  (D.I. 8-9 at 51-60)

In 2018, Plaintiff's science and social studies teacher completed a questionnaire indicating that Plaintiff had very serious problems attending and completing tasks and processing oral or visual directives, and Plaintiff often required one-on-one assistance from a teacher to comprehend directions.  (D.I. 8-7 at 91-92)  No serious problems were noted in assessing Plaintiff's ability to interact with others, make friends, perform physical activities, or care for himself.  (*Id.* at 93-95)

Following the issuance of the ALJ's decision denying benefits, a meeting was held among Plaintiff's education team members on April 12, 2018 to establish Plaintiff's IEP for the period from April 13, 2018 to April 11, 2019.  (D.I. 8-2 at 21)  Identified strengths in reading included decoding and fluency, effective use of vocabulary, and ability to retell key portions of a story after reading it.  (*Id.* at 22)  Plaintiff's Lexile[3] score nearly doubled from the beginning of the school year.  (*Id.*)  Plaintiff exhibited good spelling skills and neat, legible handwriting.  (*Id.*)  In math, Plaintiff expressed an interest in fractions and grasped concepts more quickly with the use of a verbal mnemonic device.  (*Id.*)  Plaintiff was described as "a creative and helpful child" who "has established and maintained several friendships throughout this school year."  (*Id.*)

Identified areas of concern included Plaintiff's academic performance, social skills, difficulty with multi-step instructions, and lack of focus.  (D.I. 8-2 at 22, 27)  While Plaintiff's grades improved somewhat throughout the year, Plaintiff received primarily D's and F's.  (*Id.* at 24)  The IEP indicated that Plaintiff's disability made it difficult for Plaintiff to acquire new information, and Plaintiff's impulsivity resulted in an inability to follow standard classroom and school-wide routines.  (*Id.* at 27)  Identified educational needs included assistance with

---

[3] A Lexile score measures a person's reading ability on the Lexile scale, ranging from a low of 0L to a high of 2000L.  *See, e.g.*, https://doe.sd.gov/octe/documents/WhatDoestheLexileMeasureMean.pdf.

organization and task completion, a social skills group, or other in-school opportunities to practice social skills.  (*Id.*)

Dr. William Anzalone and Dr. Kurt Maas, the state agency expert consultants, reviewed Plaintiff's records and determined that Plaintiff had a less than marked limitation in acquiring and using information; a marked limitation in attending and completing tasks due to impaired attention and a frequent need for redirection; a less than marked limitation in interacting and relating with others; no limitation in moving about or manipulating objects; a less than marked limitation in caring for oneself; and no limitation in health or physical well-being.  (D.I. 8-3 at 6-7)  Accordingly, the state agency consultants determined that Plaintiff was not disabled because Plaintiff's conditions did not functionally equal a listing.  (*Id.* at 7)

### C.      Hearing Before the ALJ

At the time of the second hearing[4] before the ALJ, Plaintiff's mother testified that Plaintiff, who was in the sixth grade, experienced difficulty focusing, interacting with others, and following directions.  (D.I. 8-2 at 69-71)  According to Plaintiff's mother, these issues improved somewhat when Plaintiff received services from an occupational therapist, a speech therapist, and a special instructor who could provide one-on-one assistance.  (*Id.* at 69)  Although Plaintiff received special education services in a small group setting, Plaintiff was placed in a regular education classroom, receiving detention occasionally for not following instructions and earning grades ranging from C's to F's.  (*Id.* at 72-73, 76-77, 83)  Plaintiff's mother indicated that, while Plaintiff was diagnosed with ADHD, no treatment was prescribed.  (*Id.* at 74-76)

---

[4] During the first hearing before the ALJ on August 10, 2017, the ALJ provided Plaintiff's mother with information on how to retain counsel and sought to obtain more evidence to supplement the record.  (D.I. 8-2 at 90-109)

Plaintiff's mother testified that Plaintiff has friends at school, and Plaintiff plays sports often with a friend in the neighborhood.  (*Id.* at 77-78)  According to Plaintiff's mother, Plaintiff is able to perform basic grooming independently, but constant prompting and supervision is necessary.  (*Id.* at 79-80)  Plaintiff also requires repeated reminding to complete chores such as tidying the bedroom and taking out the trash.  (*Id.* at 80-81)

Plaintiff's mother testified that Plaintiff had an upcoming appointment with the school to develop an Individualized Education Program ("IEP"), as well as an initial appointment with a therapist from Mental Edge Counseling.  (*Id.* at 81-82)  The ALJ indicated that updated records would be requested from Plaintiff's school and therapist following the hearing.  (*Id.* at 84)

### D.    The ALJ's Findings

Based on the factual evidence in the record and the testimony of Plaintiff's mother, the ALJ determined that Plaintiff has not been disabled under the Act since July 8, 2014, the date the application was filed.[5]  (D.I. 8-2 at 32)  The ALJ found, in pertinent part:

1.  The claimant was born on January 23, 2006.  Therefore, he was a school-age child on the July 8, 2014 application date and remains a school-age child.  (20 CFR 416.926a(g)(2)).

2.  The claimant has not engaged in substantial gainful activity since July 8, 2014, the application date.  (20 CFR 416.924(b) and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: autism spectrum disorder with language impairment, attention deficit hyperactivity disorder (ADHD), and mood disorder.  (20 CFR 416.924(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1.  (20 CFR 416.924, 416.925 and 416.926).

---

[5] SSI benefits do not begin to accrue until the month after the application is filed if all other requirements for eligibility are satisfied.  20 C.F.R. § 416.335.

5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings.  (20 CFR 416.924(d) and 416.926a).

6. The claimant has not been disabled, as defined in the Social Security Act, since July 8, 2014, the date the application was filed.  (20 CFR 416.924(a)).

(D.I. 8-2 at 34-46)

## III.    STANDARD OF REVIEW

Findings of fact made by the ALJ, as adopted by the Appeals Council, are conclusive if they are supported by substantial evidence.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3) (2015). Judicial review of the ALJ's decision is limited to determining whether substantial evidence supports the decision.  *See Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). The threshold for substantial evidence is "not high[,]" requiring "more than a mere scintilla" of evidence.  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  In determining whether an ALJ's decision is supported by substantial evidence, a reviewing court may not undertake a *de novo* review of the ALJ's decision and may not re-weigh the evidence of record or impose its own factual determinations.  *See id.*; *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).  In other words, even if the reviewing court would have decided the case differently, the court must affirm the ALJ's decision if it is supported by substantial evidence.  *See Monsour Med. Ctr.*, 806 F.2d at 1190–91.

## IV.    DISCUSSION

### A.    Evaluation of Childhood Disability

A child under the age of 18 is eligible for child's SSI if the child has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).  The Social Security Act establishes a three-step

sequential evaluation process for determining whether the child is disabled within the meaning of the statute, pursuant to which the ALJ must decide whether the child: (1) is engaged in substantial gainful activity; (2) has a severe physical or mental impairment or combination of impairments; and (3) has an impairment or combination of impairments that meets, medically equals, or functionally equals a listed impairment.  20 C.F.R. § 416.924(b)-(d).

To determine if the child's impairment functionally equals a listing at step three of the sequential evaluation process, the ALJ evaluates how the child functions in six domains: (1) acquiring and using information; (2) attending to and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1)(i)-(vi).  The ALJ compares the child's functioning to children of the same age who do not have impairments.  20 C.F.R. §§ 416.924a(b)(3); 416.926a(b).  An impairment functionally equals a listing if the child has "marked" limitations in at least two domains, or an "extreme" limitation in at least one domain.  *Id.* at § 416.926a(a).  A "marked" limitation is "more than moderate" but "less than extreme."  20 C.F.R. § 416.926a(e)(2).  It exists when the child's impairment interferes seriously with the child's ability to independently initiate, sustain, or complete activities.  *Id.*  An "extreme" limitation in a domain means "more than marked," and it exists when the child's impairment interferes very seriously with the child's ability to independently initiate, sustain, or complete activities.  20 C.F.R. § 416.926a(e)(3)(i).  However, an "extreme limitation" does not necessarily signify a total lack or loss of ability to function.  *Id.*  If the child has an impairment that functionally equals the requirements of a listing and also satisfies the durational requirement, the child will be found to be disabled.  20 C.F.R. § 416.924(d)(1).

**B.      Whether the ALJ's Decision is Supported by Substantial Evidence**

The ALJ found Plaintiff was not disabled within the meaning of the Act because, despite Plaintiff's severe impairments (autism spectrum disorder with language impairment, ADHD, and mood disorder), Plaintiff did not have one extreme or two marked limitations in the six relevant domains of functioning.  (D.I. 8-2 at 34-)  Plaintiff's primary argument on appeal is that new evidence not included in the ALJ's decision supports a finding that Plaintiff's impairments functionally equal the listings.  (D.I. 12 at 1-4)

**1.  Substantial evidence supports the ALJ's decision.**

The focus of Plaintiff's motion is on Plaintiff's request for a remand to the ALJ for consideration of an April 12, 2018 IEP assessment post-dating the ALJ's April 3, 2018 decision. (D.I. 12)  Plaintiff does not identify specific challenges to the ALJ's determination that Plaintiff's impairments do not functionally equal the listings.  I recommend that the Court uphold the ALJ's determination that Plaintiff does not have one extreme, or two marked limitations in the six relevant domains of functioning.

The ALJ's finding that Plaintiff has a less than marked limitation in acquiring and using information is supported by substantial evidence.  The Third Circuit has held that an ALJ's decision must provide "a clear and satisfactory explication of the basis on which it rests."  *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  The ALJ referenced a function report completed on October 16, 2014, in which Plaintiff's mother indicated that Plaintiff had difficulty communicating, struggled to read and comprehend simple sentences and stories, and did not understand money or how to tell time.  (D.I. 8-2 at 40; D.I. 8-7 at 15-16)  The ALJ also cited two teacher questionnaires from 2015 and 2018 in which Plaintiff's teachers confirmed Plaintiff had difficulty explaining things orally or in writing.  (D.I. 8-2 at 40; D.I. 8-7 at 91; D.I. 8-8 at 48)

12

Although the ALJ concluded that Plaintiff is limited in this domain based on the foregoing evidence, the ALJ balanced these reports against evidence and testimony showing that Plaintiff's limitation was less than marked.  Specifically, the ALJ cited Dr. Fleischman's 2014 evaluation and a report completed by Plaintiff's third grade teacher showing that Plaintiff's grades and attention improved with one-on-one attention, Plaintiff had age-appropriate verbal abilities, and Plaintiff had only a slight problem understanding vocabulary, reading and comprehending written material, comprehending and doing math problems, learning new material, recalling and applying previously learned material, and applying problem-solving skills in class discussions.  (D.I. 8-2 at 40-41; D.I. 8-7 at 27; D.I. 8-8 at 84)  A March 2015 evaluation likewise revealed no cognitive or intellectual testing or difficulties.  (D.I. 8-2 at 41; D.I. 8-9 at 32)  Accordingly, substantial evidence supports the ALJ's finding of a less than marked limitation in acquiring and using information, consistent with the standard set forth at 20 C.F.R. § 416.926a(g)(3) and SSR 09-3p.  *See Torres o/b/o C.N.C. v. Comm'r of Soc. Security*, 2017 WL 3783700, at *4 (D.N.J. Aug. 31, 2017) (affirming ALJ's finding that the plaintiff had a less than marked limitation in the domain of acquiring and using information despite acknowledging the plaintiff's autistic disorder diagnosis and history of communication and behavioral problems, including difficulty focusing and paying attention).

The ALJ's finding that Plaintiff has a marked limitation in attending and completing tasks is supported by substantial evidence.  The ALJ cited multiple evidentiary sources demonstrating Plaintiff's difficulty focusing, following directions, sitting still, and sustaining attention, including the testimony of Plaintiff's mother, reports from Plaintiff's teachers in 2014, 2015 and 2018, and the consultative examination with Dr. Fleischman.  (D.I. 8-2 at 41-42; D.I. 8-2 at 69-71; D.I. 8-8 at 85; D.I. 8-7 at 20, 28, 92)  Nonetheless, the ALJ determined that

Plaintiff's limitation in attending and completing tasks did not rise to an extreme level because Plaintiff's mother reported that Plaintiff is intelligent, excels at playing video games, and is good at art with a demonstrated ability to focus on art and crafts projects. (D.I. 8-2 at 42; D.I. 8-7 at 20; D.I. 8-9 at 32) Plaintiff's third grade teacher indicated that Plaintiff did not exhibit serious or very serious problems sustaining attention during play, waiting his turn, changing activities without disruption, and completing class or homework assignments. (D.I. 8-2 at 42; D.I. 8-7 at 28) In addition, consultative examinations indicated that Plaintiff was cooperative, coherent, and goal directed with intact attention and concentration. (D.I. 8-2 at 42; D.I. 8-8 at 81-82) Accordingly, substantial evidence supports the ALJ's finding of a marked limitation in attending and completing tasks, consistent with the standard set forth at 20 C.F.R. § 416.926a(h)(3) and SSR 09-4p. *See Torres o/b/o C.N.C.*, 2017 WL 3783700, at *5-6.

The ALJ's finding that Plaintiff has a less than marked limitation in interacting and relating with others is supported by substantial evidence. In support of Plaintiff's limitation, the ALJ relied on reports by Plaintiff's mother indicating that Plaintiff struggles to get along with adults, play team sports, or make friends, and Plaintiff can be aggressive and awkward with others. (D.I. 8-2 at 43; D.I. 8-7 at 18; D.I. 8-8 at 80; D.I. 8-9 at 27) Moreover, Plaintiff's teachers noted that Plaintiff did not seek attention appropriately, used inadequate vocabulary and grammar to express himself, and required behavior modification strategies. (D.I. 8-2 at 43; D.I. 8-7 at 29, 93)

Although the ALJ concluded that Plaintiff is limited in this domain based on the foregoing evidence, the ALJ balanced these reports against evidence and testimony showing that Plaintiff's limitation was less than marked. Specifically, the ALJ cited evidence and testimony from Plaintiff's mother indicating that Plaintiff had friends in school and in his neighborhood

and could be helpful on his own terms.  (D.I. 8-2 at 43; D.I. 8-2 at 18, 77-78; D.I. 8-9 at 32)

Reports by Plaintiff's teachers demonstrated that Plaintiff had no serious problems making and

keeping friends, expressing anger appropriately, using adequate vocabulary and grammar to

express thoughts and ideas, playing cooperatively with other children, or respecting and obeying

adults.  (D.I. 8-2 at 43; D.I. 8-7 at 29, 93)  Accordingly, substantial evidence supports the ALJ's

finding of a less than marked limitation in interacting and relating with others, consistent with

the standard set forth at 20 C.F.R. § 416.926a(i)(3) and SSR 09-5p.

      The ALJ's finding that Plaintiff has no limitation in moving about and manipulating

objects is supported by substantial evidence.  (D.I. 8-2 at 44)  The evidence of record uniformly

supports the ALJ's determination that Plaintiff has no physical limitations.  (*See, e.g.*, D.I. 8-2 at

77-78; D.I. 8-7 at 17; D.I. 8-8 at 86)  Accordingly, substantial evidence supports the ALJ's

finding of no limitation in moving about and manipulating objects, consistent with the standard

set forth at 20 C.F.R. § 416.926a(j)(3) and SSR 09-6p.

      The ALJ's finding that Plaintiff has a less than marked limitation in the ability to care for

himself is supported by substantial evidence.  (D.I. 8-2 at 45)  The ALJ evaluated evidence from

Plaintiff's mother suggesting that Plaintiff requires prompting to groom himself and perform

chores.  (D.I. 8-2 at 79-81; D.I. 8-7 at 19)  The ALJ also considered a 2015 report from

Plaintiff's teacher indicating that Plaintiff did not exercise good judgment regarding danger and

personal safety and did not know when to ask for help.  (D.I. 8-7 at 31)  However, the ALJ

concluded that this limitation did not rise to the level of a marked or extreme limitation because

Plaintiff was able to groom himself with supervision, use zippers and buttons, tie his shoes, and

help around the house.  (D.I. 8-7 at 19; D.I. 8-8 at 82, 86)  Similarly, evaluations by Plaintiff's

teachers in 2015 and 2018 stated that Plaintiff was able to take care of his personal hygiene and

personal needs.  (D.I. 8-7 at 31, 95)  Accordingly, substantial evidence supports the ALJ's finding of a less than marked limitation in the ability to care for himself, consistent with the standard set forth at 20 C.F.R. § 416.926a(k)(3) and SSR 09-7p.

The ALJ's finding that Plaintiff has no limitation in health and physical well-being is supported by substantial evidence.  (D.I. 8-2 at 46)  The evidence of record uniformly supports the ALJ's determination that Plaintiff has no limitations in health or physical well-being.  (*See, e.g.*, D.I. 8-2 at 74-76; D.I. 8-7 at 17, 32, 96; D.I. 8-8 at 87)  Moreover, the ALJ noted that Plaintiff does not take any medications, aside from treatment for well-controlled asthma, and Plaintiff is not in any formal treatment program for a particular diagnosis.  (D.I. 8-2 at 46)  These findings are also supported by the evidence of record.  (D.I. 8-7 at 32, 96; D.I. 8-8 at 87)  Accordingly, substantial evidence supports the ALJ's finding of no limitation in health and physical well-being, consistent with the standard set forth at 20 C.F.R. § 416.926a(l)(3) and SSR 09-8p.

## 2.  The post-hearing evidence does not qualify for a new evidence remand.

In support of the motion for summary judgment, Plaintiff challenges the decision of the Appeals Council stating that the additional evidence submitted by Plaintiff after the ALJ's decision did not show a reasonable probability of changing the outcome of the ALJ's decision. (D.I. 12 at 1)  According to Plaintiff, the 2018 IEP assessment from Plaintiff's middle school supports a reasonable probability of changing the disability determination.  (*Id.* at 1-3)

In response, the Commissioner contends that the post-hearing evidence does not qualify for a new evidence remand because Plaintiff has not shown that the 2018 IEP is material.  (D.I. 15 at 15)  Specifically, the Commissioner argues that the April 12, 2018 IEP is not related to the period at issue, from the filing of Plaintiff's SSI application on July 8, 2014 to the date of the

16

ALJ's decision on April 3, 2018.[6]  (*Id.*)  Moreover, the Commissioner alleges that the 2018 IEP would not have changed the outcome of the ALJ's decision because it is largely consistent with IEPs from previous years.  (*Id.*)

Although the court's review is limited to the evidence that was presented to the ALJ, evidence that was not submitted to the ALJ can be considered by the Appeals Council or the District Court as a basis for remanding the matter to the Commissioner for further proceedings, pursuant to the sixth sentence of 42 U.S.C. § 405(g).  *See Matthews v. Apfel*, 239 F.3d 589, 592-95 (3d Cir. 2001).  However, remand under these circumstances is permitted "only if the evidence is new and material and if there was good cause why it was not previously presented to the ALJ."  *Id.* at 593 (citing *Keeton v. DHHS*, 21 F.3d 1064, 1067 (11th Cir. 1994); *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985)).

Here, the 2018 IEP does not satisfy the materiality requirement under the sixth sentence of Section 402(g) because Plaintiff has not demonstrated a reasonable probability that consideration of the 2018 IEP would have changed the outcome of the ALJ's decision.  Plaintiff quotes three portions of the 2018 IEP in support of the motion, but the content of each of these quotations is consistent with evidence that was before the ALJ.  First, Plaintiff quotes the portion of the 2018 IEP stating that

> [Plaintiff's] disability affects his access to the general curriculum across all major content areas.  When provided with a set of directions, [Plaintiff] is often unable to complete more than one out of the series.  [Plaintiff] requires directions to be

---

[6] Although the 2018 IEP is forward-looking and aims to set forth a plan for Plaintiff's education in the upcoming year, the assessment is based largely on data and reports from Plaintiff's educational experience prior to the April 3, 2018 decision of the ALJ.  (D.I. 8-2 at 21-27)  In this regard, the 2018 IEP satisfies the "implicit materiality requirement . . . that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition."  *Szubak v. Sec'y of Health & Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984) (citing *Ward v. Schweiker*, 686 F.2d 762, 765 (9th Cir. 1982)).

> broken down into single-item requests. When challenged by a situation where he
> is unsure of what to do, [Plaintiff] typically elects to put his head down, draw
> absently, or stare idly around the room. [Plaintiff] is easily distracted by things he
> finds amusing, and he struggles to focus on an academic assignment for more than
> a few minutes.

(D.I. 12 at 1-2)  This assessment is consistent with, and cumulative of, evidence that was before

the ALJ prior to the issuance of the ALJ's decision on April 3, 2018.  For instance, Plaintiff's

difficulty in comprehending directions was noted in the January 2018 teacher questionnaire

completed by Plaintiff's teacher, who noted that Plaintiff "does not process oral or visual

directions the first or second time."  (D.I. 8-7 at 91)  Plaintiff's teacher expressly stated that

Plaintiff had a very serious problem carrying out both single-step and multi-step instructions.

(*Id.* at 92)  Plaintiff's 2012 IEP further indicated that Plaintiff "at times held onto only one part

of a question/direction causing him to answer incorrectly."  (D.I. 8-8 at 42)  Plaintiff's 2010

assessment stated that Plaintiff "carried out two-step unrelated directions, but did not

consistently follow three-step unrelated directions," and Plaintiff's mother reported that, "even

with one step directions, [Plaintiff] does not always appear confident in what she tells him to

do."  (*Id.* at 56; *see also* D.I. 8-9 at 28)

  With respect to Plaintiff's tendency to withdraw in challenging situations, Dr. Margolis

observed in 2012 that Plaintiff had "poor frustration tolerance."  (D.I. 8-8 at 35)  The March

2013 Functional Behavioral Assessment completed by Plaintiff's teacher further indicated that

Plaintiff's behavior "rarely occurs when few demands are placed on the student or when the

student is left alone," but "[t]he student is often noncompliant when asked to complete tasks and

the student sometimes or always postpones or escapes the tasks."  (*Id.* at 49)  During a 2015

assessment, Dr. Manfredi noted that Plaintiff became tearful and defensive, and sat on the floor

during most of the evaluation, facing away from the examiner.  (D.I. 8-9 at 31)  Plaintiff's

difficulty maintaining focus and attention is well-documented throughout the record before the

ALJ.  (*See, e.g.*, D.I. 8-8 at 5, 9, 16, 39, 80-82; D.I. 8-7 at 27-28)

Next, Plaintiff quotes the portion of the 2018 IEP stating that

[Plaintiff's] disability makes it difficult for him to acquire new information unless
it is specifically linked to prior knowledge.  Making meaning of his assigned work
is a struggle.  [Plaintiff's] math fact fluency is tenuous, and attempts to grow his
knowledge of mathematical concepts, including those of non-counting numbers,
are often unsuccessful.  When he is unable to complete the arithmetic in a math
problem, he typically chooses not to do the assignment at all.

(D.I. 12 at 2)  But Plaintiff's difficulty acquiring new information was previously identified in

the January 2018 assessment by Plaintiff's teacher, who noted that Plaintiff had "a very serious

problem" learning new material and recalling and applying previously learned material.  (D.I. 8-

7 at 91)  Similarly, Plaintiff's difficulty understanding the assigned work was previously noted in

the same teacher questionnaire, which indicated that Plaintiff had a very serious problem

understanding oral or visual instructions the first or second time.  (*Id.*)  The questionnaire further

stated that Plaintiff had a serious problem comprehending and doing math problems.  (*Id.*)

Finally, Plaintiff quotes the portion of the 2018 IEP stating that

[Plaintiff's] disability also hinders his access to appropriate social interactions in
and out of a school setting.  [Plaintiff's] impulsivity affects the classroom
environment, as [Plaintiff] is sometimes enchanted with an object, phrase, or
image, and will repeatedly bring attention to it while laughing to himself.
[Plaintiff's] impulsivity directly affects his ability to follow standard classroom
and school-wide routines, such as walking silently in a hallway or sustaining
attention to a task.

(D.I. 12 at 3)  Plaintiff's impulsivity was observed by Dr. Margolis as early as 2012, when he

noted that Plaintiff "engages in some impulsive behaviors such as when he jumps off of furniture

and engages in flipping."  (D.I. 8-8 at 32)  In 2014, Dr. Fleischman also observed "[g]eneral

behavior symptoms includ[ing] aggressiveness towards adults and peers, deliberate

destructiveness, stereotypical movements including echolalia,[7] rocking, and spinning at school."
(*Id.* at 80)  Dr. Fleischman identified "a lot of out-of-seat behavior," including making loud
noises in class, walking and running around the classroom, and breaking classroom supplies.
(*Id.*)  Dr. Manfredi also observed Plaintiff's tendency to use different voices and repeat a scripted
phrase out of context.  (D.I. 8-9 at 31)

In sum, the quoted material from the 2018 IEP reiterates information that was already in
the record before the ALJ prior to the issuance of the ALJ's April 3, 2018 opinion.
Consequently, it is not reasonably probable that the 2018 IEP would have changed the outcome
of the ALJ's April 3, 2018 decision finding Plaintiff not disabled.

V.      **CONCLUSION**

For the foregoing reasons, I recommend that the court DENY Plaintiff's motion for
summary judgment (D.I. 12), and GRANT the Commissioner's cross-motion for summary
judgment (D.I. 14).

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R.
Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections
within fourteen (14) days after being served with a copy of this Report and Recommendation.
Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10)
pages each. The failure of a party to object to legal conclusions may result in the loss of the right
to de novo review in the District Court.  *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1
(3d Cir. 2006*)*; *Plaintiff v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order In Pro Se Matters For Objections

---

[7] Echolalia is defined as the uncontrollable and immediate repetition of words spoken by another
person. *See https://www.dictionary.com/browse/echolalia.*

Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the

court's website, http://www.ded.uscourts.gov.


Dated: February 3, 2021                         _____
                                                Sherry R. Fallon
                                                United States Magistrate Judge